Stephen J. BROWNLEE, Appellant,

v.

STATE of Indiana, Appellee.

No. 49A04–8904–CR–123.

Court of Appeals of Indiana,
Fourth District.

June 19, 1990.

Monica Foster, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Stephen J. Brownlee appeals his convictions of attempted murder, a class A felony[1] and attempted robbery, a class A felony.[2] He raises the following issues:

I. Whether the trial court erred in denying Brownlee's petition to file a belated motion to correct error which would have included Issue II.

II. Whether the trial court erred, both in failing to notify Brownlee the jury had requested the court to replay the testimo-

ny of Brownlee's alibi witness, and in failing to replay such testimony.

III. Whether the trial court erred in permitting a one-on-one identification procedure during the trial.

IV. Whether the trial court erred in instructing the jury that the uncorroborated testimony of a victim may be sufficient to sustain a conviction in spite of the defendant's alibi defense.

V. Whether there was sufficient evidence to sustain the conviction for robbery.

We find the court did err (1) by not permitting a belated Motion to Correct Errors and (2) by failing to notify defendant and his counsel of the jury's request to replay testimony. We find the evidence was sufficient but we reverse on issues I and II.

### Facts

Evidence supporting the verdict reveals that, on January 14, 1988, two men came to the front of a Century Oil Station in Indianapolis where Reggie Williams was working. One of the men, later identified by Williams as Brownlee, entered the station and pulled a pistol out of his pants. At that time, Bernie Martin, the station manager, came out of the back room. Brownlee said, "Here's the deal, you know what time it is," and "It's time." Martin was not paying attention and did not realize what was going on. When he started to walk to the back room, Brownlee shot him in the head. He then pointed the gun at Williams and left. Williams was the only witness who could make a positive identification. Jack Coe and Lonnie McFarland were outside the station putting air in the tires of their vehicles at the time of the shooting. Neither Coe nor McFarland saw the faces of the men who were running from the station.

Brownlee was tried twice. In the first trial, the jury was unable to reach a verdict. In the second trial, Brownlee's alibi witness, his former girlfriend, was unavailable. A tape of her testimony in the first trial was played for the jury.

---

1. Ind.Code §§ 35–41–5–1, 35–42–1–1.

2. Ind.Code §§ 35–41–5–1, 35–42–5–1.

Additional facts will be given when necessary to our decision.

### Decision

Issues I and II

■ During its deliberations, the jury sent a note to the trial court which indicated two of the jurors were unable to hear the tape of the alibi witness's testimony and requested that the tape be replayed. Without informing or consulting with Brownlee or the State, the trial court replied, "No." Neither Brownlee nor his counsel were aware of this communication until his appellate counsel received the transcript in preparation for his appeal, and the issue was not included in the timely filed motion to correct errors.

When appellate counsel discovered the communication, she contacted Brownlee's trial counsel, who confirmed that she was unaware of the communication and indicated she would have objected to the denial of the request and would have included the issue in the motion to correct errors. Appellate counsel then petitioned to file a belated motion to correct error which included an affidavit from trial counsel stating she would have objected and would have included the issue in the motion to correct errors had she known of the communication.

Brownlee argues the trial court erred in denying the petition and, therefore, this court should consider the issue on its merits. We agree.

Permission to file a belated motion to correct error is within the discretion of the trial court. *Campbell v. State* (1985), Ind., 483 N.E.2d 66. Belated motions to correct error are governed by Ind.Post Conviction Rule 2(2) which provides:

**Section 2. Belated Motion to Correct Error.** Any defendant convicted after a trial or plea of guilty may petition the court of conviction for permission to file a belated motion to correct error, where:

(a) no timely and adequate motion to correct error was filed for the defendant;

(b) the failure to file a timely motion to correct error was not due to the fault of the defendant; and

(c) the defendant has been diligent in requesting permission to file a belated motion to correct error under this rule.

The State does not argue that the omission of this issue from the motion to correct error was the fault of Brownlee or that Brownlee failed to act diligently in requesting permission to file. Instead the State argues that a timely and adequate motion to correct error was filed and that the denial of the petition was harmless error.

The failure to raise an issue in a timely motion to correct error does not render the motion inadequate, *Brown v. State* (1982), Ind., 442 N.E.2d 1109; *Dobeski v. State* (1981) 275 Ind. 662, 419 N.E.2d 753; *Adams v. State* (1979) 270 Ind. 406, 386 N.E.2d 657. However, in the above cited cases, unlike Brownlee's case, trial counsel knew of the issues which were not raised in the motion to correct errors. Here, there was no indication the defendant knew or could have known of the communication until his appellate counsel received the transcript. His trial counsel states in her affidavit that she would have raised the issue of the *ex parte* communication, had she known about it, in the motion to correct errors. (R 233). Thus, a crucial issue was, in effect, concealed from defendant Brownlee and thereby not raised in his original motion. Basic fairness requires that the defendant be aware or have reason to be aware of such an issue. We find, under these facts, the trial court erred in not permitting Brownlee to raise the issue by way of a belated motion.

In addition, the failure to inform counsel of the communication and to replay the alibi witness's testimony is reversible error. During deliberations, the jury sent the following note to the court:

jurors # 11 and # 12 could not clearly hear certain parts of Stephen Brownlee's girlfriend's taped testimony, the jury requests to again hear the girlfriend's tape recorded testimony.

The procedure to be followed when confronted with such a request is provided by Ind.Code § 34–1–21–6, which reads:

After the jury have retired for deliberation, if there is a disagreement between

them as to any part of the testimony, or if they desire to be informed as to any part of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

In *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188, our supreme court construed this statute to mean that the trial court *must* reread or replay any properly admitted testimony, if the jury indicates there is a *disagreement* about the testimony. *Cf. Shaffer v. State* (1983), Ind., 449 N.E.2d 1074 (trial court has discretion to deny request if jury wants testimony of numerous witnesses reread amounting to effective retrial of case). Although the statute seems to require that the jurors *disagree* about the testimony, rather than merely being unable to hear the testimony, *see Counceller v. State* (1984), Ind., 466 N.E.2d 456, here, we are unable to determine from the record (or the parties' briefs) who wrote the jury's note or whether there was any disagreement about the testimony. The note states that jurors 11 and 12 could not clearly hear certain parts of Brownlee's girlfriend's taped testimony. It is not clear what the note means. It might have been the fact that jurors 1–10 heard one thing and jurors 11 and 12 heard another, thereby creating a disagreement requiring replaying of the tape. If, in fact, there had been such a disagreement, the author of the note may have incorrectly described the situation as one where jurors 11 and 12 did not hear the testimony.

Because Brownlee was not informed of the jury's request, he had no opportunity to request clarification and determine if there was, in fact, a disagreement, which would have brought the request within the mandatory provisions of the statute. Brownlee's defense depended on his assertion that Williams's identification was incorrect.

His girlfriend's alibi testimony was central to this defense. The Indiana Constitution, Article § 13, guarantees the defendant the right to be present at all stages of a criminal proceeding. When communication between the court and the jury occurs outside of the defendant's presence, there is a presumption of harm which the State must rebut to avoid reversal. *Alexander v. State* (1983), Ind., 449 N.E.2d 1068, 1074. Under these circumstances, the trial court's failure to inform Brownlee of the jury's request is reversible error.[3]

III. Identification during trial.

█ During cross examination of Williams, Brownlee questioned him about two photocopies of photographs which Brownlee's counsel had shown Williams before trial. One of the photographs was of Brownlee. The other photograph was of Paul Curry who had been arrested for an attempted robbery and an attempted murder which occurred at a nearby gas station after Brownlee had been jailed in connection with the charge in this case. Williams testified he was sure his identification of Brownlee was correct, but stated that he asked to see color photographs of the two men.

Brownlee argued that Curry resembled a composite drawing of the gunman in this case, which was compiled with the help of the other witnesses.[4] His counsel requested Curry be placed in a lineup with Brownlee, but the request was refused.

After the State rested its case, it asked to reopen the case and recall Williams. The trial court agreed. Curry was brought to the court room and shown to Williams who then testified he was sure that Brownlee, not Curry, was the man who shot Martin.

Brownlee argues that this procedure was unconstitutionally suggestive. The State

3. The State cites *Marsillett v. State* (1986), Ind., 495 N.E.2d 699, for the proposition that *ex parte* communications between the judge and the jury are harmless error when the judge merely refuses the jury's request. The State notes that *Marsillett* involved a request to replay part of the testimony. However, *Marsillett* is distinguishable from this case, because, in *Marsillett,* the

defendant's counsel was "present in court each time the jury made a request and was able to sufficiently represent the interests of the defendant." *Id.* at 709.

4. These witnesses, who were outside the station, were unable to identify Brownlee.

correctly notes that Brownlee did not object to the procedure on this basis. Instead, Brownlee objected that the procedure violated Curry's constitutional rights. Therefore, the State argues the issue is waived because a party may not argue a different basis for objection on appeal. *Daniel v. State* (1988), Ind., 526 N.E.2d 1157.

Even if the issue were not waived, we find no error. The cases cited by Brownlee concern suggestive identification procedures aimed at a defendant. Here, Curry was not the defendant. Even if Williams was incorrect in his identification of Brownlee, it does not necessarily follow that Curry was guilty of the crime. In addition, Brownlee opened the door to this procedure by injecting Curry's name and photograph into the trial and suggesting that Curry, not Brownlee, was guilty of the crime charged. A defendant may not raise an issue and then close the door at his convenience. *Jones v. State* (1986), Ind., 500 N.E.2d 1166, 1170.

IV. Instructions

■ Brownlee claims that the trial court erred in giving the following instructions:

*Instruction No. 24*

A conviction may be sustained on the uncorroborated testimony of a single witness.

*Instruction No. 30*

The uncorroborated testimony of a Prosecuting witness may be sufficient to sustain a conviction, notwithstanding Defendant's presentation of an alibi defense.

Brownlee objected to Instruction No. 30 as follows:

As to State's Final Instruction Number One, this isn't a complete reading of the paragraph in Lambert versus State, wherein this is asserted. There's been left out language from that paragraph and the prosecutor's just dissected language which he feels is most favorable to the State and therefore I would object for that reason as to Count One.

The objection to Instruction No. 24 was as follows:

Well, Judge, it seems as though this language out of Mullin versus State, I've read the case, it's been some time ago but I think this is just part of the dictum in the Mullin's case and not an actual, not the actual finding of that case.

On Appeal, Brownlee argues the instructions "served to exalt the testimony of the prosecution witness over that of the defendant's witness." This was not the basis for the objection in the trial court. As we noted, a defendant may not argue a new basis of error on appeal. *Daniel, supra.*

■ Brownlee also argues that *Lambert v. State* (1987), Ind., 516 N.E.2d 16, cited by the State in support of instruction No. 30, is not an instruction case, but deals with the appellate standard of review in a sufficiency challenge. However, the propriety of an instruction does not rest on legal technicalities involving a case cited to support it. Instead, the question is whether the instruction is a correct statement of the law. In *Hicks v. State* (1989), Ind., 536 N.E.2d 496, our supreme court approved an instruction which stated the defendant may be convicted on the uncorroborated testimony of the victim. The *Hicks* court also noted:

So long as the jury was instructed on the elements of the offense charged, the State's burden of proof throughout the case, the presumption of the defendant's innocence, the credibility of the witnesses, and the manner in which the jury was to deliberate to reach a verdict, the instruction about which appellant complains is proper.

*Id.* at 499. Here, Brownlee claims there was no final instruction on witness credibility. However, such an instruction was included in the preliminary instructions and Brownlee waived rereading of those instructions. The *Hicks* case, however, involves an instruction that states the defendant can be convicted on the uncorroborated testimony of the victim. We do observe that there is no authority in this jurisdiction which states that a defendant can be convicted on the uncorroborated testimony of a specific witness *in spite of other testimony from a specified source.*

On remand, the trial court should avoid singling out and comparing the relative worth of specific evidence. Instruction No. 30 has the effect of disparaging Brownlee's legitimate and good faith defense of alibi. This is improper. *Walker v. State* (1976) 265 Ind. 8, 349 N.E.2d 161, *cert. den.* 429 U.S. 943, 97 S.Ct. 363, 50 L.Ed.2d 313.

V. Sufficiency of Evidence

 Finally, Brownlee claims the evidence was insufficient to prove that he intended to commit a robbery. Brownlee bases this assertion on the fact that he did not ask for money and did not take anything.

As our supreme court explained in *Metzler v. State* (1989), Ind., 540 N.E.2d 606, 609:

> Intent is a mental function and, absent admission, it must be determined by courts and juries from a consideration of the defendant's conduct and the natural and usual consequences of such conduct. *State v. McGraw* (1985), Ind., 480 N.E.2d 552, 554. Because intent is a mental state, the trier of fact must usually resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, a showing or inference the intent to commit that conduct exists. *Montego v. State* (1987), Ind., 517 N.E.2d 74, 75, *overruled on other grounds*, *Myers v. State* (1989), Ind., 532 N.E.2d 1158.

Here, the evidence established that Brownlee entered the gas station, pulled out a gun, and said "it's time." There was no evidence that Brownlee knew Williams or Martin before this incident. The jury could reasonably infer from this evidence that Brownlee intended to commit a robbery.

Reversed and remanded for a new trial.

CONOVER and ROBERTSON, JJ., concur.