**Michael Terry NUCKLES, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–8908–CR–633.**

Supreme Court of Indiana.

Oct. 16, 1990.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Attempted Murder, a Class A felony, for which he received thirty (30) years, enhanced by thirty (30) years by reason of his status as a habitual offender, and Theft, a Class D felony, for which he received a sentence of two (2) years, the sentences to run concurrently. In addition, the trial judge ordered that those sentences would be served consecutively to sentences which appellant recently had received as a result of convictions of Burglary and Theft in an unrelated matter.

The facts are: At approximately 11:00 p.m. on November 2, 1987, David Clark answered a knock on his door. He opened the security window on the door and saw a stranger, who he later identified as appellant. The man asked to use Clark's telephone. When Clark refused him entrance, appellant punched his arm through the security window. Clark ran to his bedroom and obtained a gun. When Clark reappeared in the hall with his gun, appellant was standing in the hall holding a gun. Clark fired a shot, which grazed appellant's chest. Appellant knocked Clark against a mirror, and in the ensuing struggle, Clark again managed to fire a shot which passed through appellant's finger. Nevertheless, appellant was able to disarm Clark. As Clark sat on the floor, appellant pointed his gun at him, threatened to kill him, and then fired a shot which struck Clark in the head. Appellant then fled.

A neighbor, Arthur Buescher, testified that later that evening a man he identified as appellant knocked at his door and stated that he had been hit by a car and asked to use the telephone. Eventually Buescher agreed to take appellant to a gasoline station.

Deanna Thomas and Athena Walsh testified that shortly before midnight that evening they encountered appellant with whom they were acquainted. However, when he asked for a ride, they refused. Both women testified that appellant's hand was injured and bleeding. He also showed them the graze wound on his chest. He

told them that he was shot when he broke into someone's home and that he had shot at the person in the home. Following the encounter with appellant, the two women decided the matter should be reported to the police. The next morning Walsh called the police and informed them of the incident.

Appellant testified to an entirely different factual situation. He stated that he had been hitchhiking and that Clark had picked him up. After sharing marijuana, they drove to Clark's apartment upon Clark's invitation to view his gun collection and drink some beer. He stated that shortly after he arrived at Clark's home Clark went into the bedroom, obtained a gun, and demanded that appellant give him his marijuana. He stated that only then did the struggle to which Clark testified occur. He vehemently denied that he was armed or ever fired a shot at Clark.

■ Appellant claims he was denied effective assistance of counsel. Appellant claims that when he appeared for the initial hearing on November 17, 1987, he requested a speedy trial. However, the record does not indicate that such a request was made. In fact, at that hearing, the case was set for jury trial for January 28, 1988. At a pretrial conference, held on December 16, 1987, appellant's trial counsel requested a continuance of the trial date and this request was granted, and by agreement of the parties, trial was set for February 1, 1988.

On January 12, 1988, the trial court received a letter from appellant in which he advised the court that he objected to the continuance and had so informed his defense counsel and had requested that counsel file a motion for early trial. On January 21, 1988, the State filed a motion for a continuance on the ground that the court calendar was congested. The case then was continued until April 4, 1988, at which time the trial was held.

Appellant concedes that the record does not show he made a request for early trial at the initial hearing. The record also fails to show that he made any objection when his counsel asked for a continuance on December 16, 1987. Thus, the issues are waived. *Fry v. State* (1988), Ind., 521 N.E.2d 1302. Conceding this for the sake of argument, appellant also claims the letter received by the trial court on January 12, 1988 constituted a request for early trial and should have been so treated.

However, the record shows the trial court received a letter from appellant on January 19, 1988 in which appellant requested another pretrial hearing and more time for discovery purposes. When the State filed its motion on February 2, 1988 for a continuance due to calendar congestion, appellant did object. However, a congested calendar is a recognized exception to the speedy trial rule. *See* Ind.Crim.Rule 4(B)(1).

Appellant cites this entire series of events as evidence of deficient performance on the part of his trial counsel. From the beginning, appellant was represented by counsel, who we must presume was attempting to prepare his case in proper form and obviously felt that he needed more time for such preparation. Appellant, *pro se*, interjected himself into the procedure and made requests contrary to those made by trial counsel. There is nothing in this record that demonstrates deficient performance by trial counsel. We see nothing here to violate the guidelines laid down by *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

■ Appellant next claims his counsel was ineffective in that at both the original trial and the habitual offender phase of his trial his counsel waived opening statements in the presence of the jury. In *Miller v. State* (1989), Ind., 541 N.E.2d 260, 263, this Court stated:

"[Trial counsel's] election to forego making an opening statement ... is a matter of trial strategy and is not a basis for a finding of inadequate counsel."

We will not second-guess counsel on decisions of trial strategy. *Strickland, supra.*

■ Appellant also contends his trial counsel failed in a number of ways to properly impeach the testimony of State's witnesses. He claims that Deanna Thomas

and Athena Walsh could not agree as to whether they discussed the matter of calling the police before Walsh called the police the following morning. Although Walsh testified at trial that appellant told her he had shot someone, she stated she was unable to remember making a prior statement that appellant had not told her that he had shot someone.

These were matters which were placed before the jury and presented a conflict in the evidence which was to be weighed by the jury. We cannot say that the manner in which appellant's counsel chose to handle these conflicts in the evidence constituted deficient performance. In fact, the indication is the opposite. Had trial counsel pursued these apparent conflicts, he might well have succeeded only in emphasizing the testimony of the women and cleared up what appeared to be a conflict in testimony.

■ Appellant also claims his trial counsel was ineffective in that he failed to impeach Clark. He contends that Clark had testified previously that he fired four shots during the encounter with appellant, whereas at trial, he testified he fired three shots and that when he so testified, counsel made no effort to impeach him. Whether Clark fired four shots or three shots is obviously *de minimis* to the issues before the jury. For trial counsel to dwell upon such a trifle would have resulted only in a reiteration of Clark's version of the conflict and might well have been detrimental rather than helpful to appellant's case. Trial counsel's restraint in this regard reflects experience as a trial counsel rather than deficient performance.

■ In the same category is appellant's claim that his counsel should have impeached Clark on the question of whether Clark fired the shot which grazed appellant's chest before he was slammed into the mirror or after he was slammed into the mirror. Again, we would observe that such trifling with Clark's testimony by appellant's counsel would have succeeded in doing little more than emphasizing Clark's testimony.

■ Appellant contends his counsel was deficient in that he permitted the State to badger him on the witness stand. However, an examination of the record shows that the State was merely engaged in proper vigorous cross-examination of appellant when appellant suddenly became belligerent and stated he would refuse to answer the State's question because the State was badgering him. There was nothing prior to that outburst to which appellant's counsel could have objected successfully.

■ At another point in the cross-examination, when appellant stated that he had not shot Clark, he himself asked the question, "Where's the gun that I shot him with?" to which the prosecutor replied, "You took it with you." Appellant again repeated, "Where's the gun?" to which the prosecutor again replied, "You took it with you." Appellant then voluntarily entered into his version that he had no gun and was admonished by the court to refrain from making statements and to answer the prosecutor's questions. It was proper for the trial court to intercede at that point. Appellant's demeanor obviously was damaging him and he could have been further damaged by his own counsel so admonishing him. Trial counsel cannot be blamed for appellant's misconduct on the witness stand. In fact, both counsel and appellant benefited by the trial court's intercession to prevent appellant from further damaging his case by his outbursts.

■ Appellant also contends ineffectiveness of counsel in that counsel did not properly tender his Instruction No. 2, which he states concerned included offenses. However, the trial court did give appellant's Tendered Instruction No. 3 on the subject of included offenses. By footnote in his brief, appellant states that the record does not include the tendered instructions which were refused and that they could not be found for inclusion in the record. However, he asks us to consider the failure of the giving of those instructions notwithstanding their absence in the record. He fails to give us the content of Tendered Instruction No. 2 other than to

say that it was on the subject of included offenses.

■ Appellant also claims that his Instruction No. 1, which is missing, was on the subject of self-defense. However, the trial court did give final instructions on self-defense and on included offenses. Under the circumstances, we cannot say that counsel's failure to properly present Tendered Instruction No. 2 has been demonstrated to have deprived appellant of proper instructions to the jury. Failure to give an instruction, which is covered by instructions given by the trial court, is not reversible error. *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486.

Appellant argues that if each alleged miscue of his trial counsel was not sufficient to demonstrate ineffective assistance of counsel, the collective errors should be sufficient to cause reversal. Appellant cites *Smith v. State* (1987), Ind., 511 N.E.2d 1042 and *Williams v. State* (1987), Ind., 508 N.E.2d 1264. However, in those cases, we did find that certain actions of trial counsel were improper.

However, in the case at bar we find no improper conduct on the part of trial counsel. Even if one would concede that appellant's Tendered Instruction No. 2 was not submitted properly, counsel did nevertheless obtain an instruction on included offenses over the objection of the State. There is no demonstration in this record that counsel did not accomplish his purpose. There is nothing in this record to justify a reversal on the ground of ineffective assistance of counsel.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.